## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)

| | | |
|---|---|---|
| **DAMON L. PATTERSON** | : | |
| 238 Knoll View Drive | : | |
| Phillipsburg, NJ 08865 | : | Civil Complaint No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **GREG PARKER** | : | **JURY TRIAL OF TWELVE (12)** |
| 15124 SW 36th Street | : | **JURORS DEMANDED** |
| Philadelphia, PA 19121 | : | |
| | : | |
| And | : | |
| | : | |
| **SHAWN BUTLER** | : | |
| 5602 Walnut Street, Apt. B | : | |
| Philadelphia, PA 19139 | : | |
| | : | |
| And | : | |
| | : | |
| **CICILY N. HAWES** | : | |
| 5776 Nassau Road | : | |
| Philadelphia, PA 19131 | : | |
| | : | |
| And | : | |
| | : | |
| **AP CAPITAL LLC** | : | |
| 3020 Redner Street | : | |
| Philadelphia, PA 19121 | : | |
| | : | |
| And | : | |
| | : | |
| **JOHN DOES 1-10**, | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

**I.     INTRODUCTION**

1

1.    Plaintiff, Damon L. Patterson bring this action against Defendant, Greg Parker, as well as his associates that Defendant, Greg Parker oversees, that operate as a unified corrupt organization under the Racketeer Influenced and Corrupt Organizations Act in a simple fraud scheme involving real estate investments.

2.    The RICO Enterprise used Defendant, Greg Parker's perceived status as a "real estate mogul" in a you-can-do-it-too scheme, that was in fact a front used to induce victims into "purchasing" real estate properties from the RICO Enterprise.

3.    However, in reality, the RICO Enterprise, after gaining the trust of its victims, accepted sums of money for properties that were never transferred; i.e. the RICO Enterprise would take the money and give the victim the run-around for months or years.

4.    It is believed and therefore averred that the RICO Enterprise continues to solicit victims in order to continue its simple fraud scheme.

5.    Plaintiffs now bring the RICO claim, as well as a number of state law claims, for the fraudulent and deceptive conduct of the RICO Enterprise.

## II.    JURISDICTION & VENUE

6.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

7.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this matter involves a federal question, as well as pursuant to 18 U.S.C. §§ 1961-1968 for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as Defendants have, directly and/or indirectly, made use of the means and/or instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein. Alternatively, this Honorable Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as

there exists complete diversity between the parties and the amount in controversy exceeds $75,000.

8.    Further, this Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is proper in this District as (i) one or more defendants reside within this District; and (ii) one or more of the transactions, acts, practices and courses of business alleged herein occurred within this District.

10.    All Defendants performed substantial business within this District, as described herein, thereby knowingly subjecting themselves to the jurisdiction of this Honorable Court.

## III.    PARTIES

11.    Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

12.    Plaintiff, Damon L. Patterson ("Patterson"), is an adult individual currently residing at the above-captioned address. Plaintiff has been disabled at all material times to this matter; though previously served his nation in the U.S. Army.

13.    Defendant, Greg Parker ("Parker") is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise. Upon information and belief, Defendant, Greg Parker directs and controls the RICO Enterprise.

14.    Defendant, Shawn Butler ("Butler") is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise.

15.    Defendant, Cicily N. Hawes ("Hawes") is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise.

16.    Defendant, AP Capital LLC a/k/a AP Capital Limited Liability Company ("AP Capital"), is a limited liability company existing by virtue of and operating under the laws of the

3

Commonwealth of Pennsylvania, with a registered place of business at the above-captioned address. Upon information and belief, Defendant, Parker is the sole owner of Defendant, AP Capital.

17.     Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, employees, affiliates, and/or co-conspirators of Co-Defendant(s) and/or members of the RICO Enterprise, liable to Plaintiffs hereunder.

18.     The term "RICO Enterprise" herein refers collectively to Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10.

## IV.    OPERATIVE FACTS

19.     Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

20.     Defendant, Parker holds himself out to the public as a "real estate mogul" who has the ability to transform individuals into successful real estate investors through the exclusive opportunity to purchase investment properties selected by Defendant, Parker.

21.     Defendant, Parker also hosts fee-based, group seminars on real estate investing through which Defendant, Parker identifies individuals for one-on-one classes and investment schemes, typically used as a vehicle to obtain new investor-victims.

22.     Defendant, Parker uses a host of legal entities to shield himself from his fraud victims, including, upon information and belief, Non-Parties, G Parker Unlimited LLC, Parker Properties Unlimited, LLC, Parker Unlimited Properties, LLC, Maybach Construction LLC, and Rehab

Queen Ohio, LLC. It is believed that discovery will reveal evidence that each of the foregoing Non-Party-entities are additional members of the RICO Enterprise identified herein.

23.    Defendant, Parker has been a guest lecturer at Temple University, as well as seminars hosted by third-parties, concerning real estate investing. Defendant, Parker was also featured in an article by Black Enterprise[1] and has been a guest on podcasts. As a result of the foregoing, Plaintiff further relied upon the representations made by Defendant, Parker as described *infra.*

24.    In or around January 2020, Plaintiff, Patterson communicated with Defendants, Parker and Butler, who represented to Plaintiff, Patterson that Defendant, Parker possessed an exclusive listing of properties that would be great opportunities for rental-income investments.

25.    Defendant, Parker explained that his process was to obtain the funds from the potential investor and then Defendant, Parker would independently and timely select a property to transfer to the potential investor.

26.    Defendant, Parker also explained that he could provide hard-money financing if needed.

27.    Ultimately, in or around late February 2020, Plaintiff, Patterson and Defendant, Parker agreed that Plaintiff, Patterson would wire the sum of $175,000 to a to-be-identified account for full payment of the purchase of two properties, in Cleveland, Ohio, to be selected by Defendant, Parker.

28.    Defendant, Parker introduced Plaintiff, Patterson to two associates of Defendant, Parker; namely, Defendants, Butler and Hawes. Defendant, Parker explained that Defendants, Butler and Hawes would be assisting Defendant, Parker in the process.

---

[1]    *[Passion to Purpose] Meet Real Estate Investor and Community Builder Greg Parker.* Daron Pressley, November 12, 2016. Black Enterprise Website, accessed on January 14, 2022, at https://www.blackenterprise.com/meet-real-estate-investor-greg-parker/.

29.    Defendants further explained to Plaintiff, Patterson that once the properties were selected, Defendants would draft appropriate contractual documents concerning the real estate purchases.

30.    On or about March 5, 2020, Defendant, Butler provided Plaintiff, Patterson with the wiring instructions for the $175,000 wire to an account held by Defendant, AP Capital.

31.    On or about March 5, 2020, relying on the representations of Defendant, Parker and in accordance with the agreement between Plaintiff, Patterson and Defendant, Parker, Plaintiff wired Defendant, AP Capital LLC, the sum of $175,000, to the account identified by Defendant, Butler. *See* Exhibit A.

32.    On March 5, 2020, Plaintiff, Patterson conveyed to Defendant, Butler that he wished the properties to be placed in the name of Plaintiff, Patterson's LLC, i.e. Plaintiff, Big Thinkers Inc. LLC. Further, Plaintiff, Patterson requested that his fiancé, Non-Party, Dionne Evans, be able to inspect the selected properties prior to finalization. Plaintiff, Patterson did not receive a substantive response.

33.    Over the following twenty-nine days, Plaintiff, Patterson communicated with Defendants, Parker and Butler, requesting information regarding the selected properties and the pertinent legal documents to effectuate the transfers.

34.    On or about April 3, 2020, Defendant, Parker provided two contracts for the sale of two properties in Cleveland, Ohia to Plaintiff, Patterson via a DocuSign email that crossed state-lines. *See* Exhibits B, C, & D. In the body of the email, Defendant, Parker fraudulently stated, "Hello (sic) Please review the agreement (sic) make sure everything is correct and sign." *See* Exhibit B.

35.    The first contract pertained to a property located at and known as 1201 North Lockwood Avenue, East Cleveland, OH 44112 (the "Lockwood Property"). *See* Exhibit C (the "Lockwood Contract"). The Lockwood Contract called for a purchase price of $85,000.

36.     The second contract pertained to a property located at and known 1757-58 Collamer Street, East Cleveland, OH 44112 (the "Collamer Property"). *See* Exhibit D (the "Collamer Contract"). The Collamer Contract called for a purchase price of $85,000.

37.     Both Contracts listed the seller as Non-Party, Hometown Estates, LLC and did not reflect that Plaintiff had already paid the purchase price. Nor was there an explanation on the remaining $5,000 paid.

38.     After receipt of the Lockwood Contract and Collamer Contract, before Plaintiff, Patterson executed each as instructed in writing, Defendant, Parker called Plaintiff, Patterson and instructed Plaintiff, Paterson not to execute the two contracts.

39.     Defendant, Parker explained that the two contracts were just "examples" of the contracts that Plaintiff, Patterson would receive in the future once Defendant, Parker selected the actual properties. Defendant, Parker conveyed excuses for the delay in selecting and completing the transaction.

40.     Upon information and belief, Defendant, Parker's conflicting statements were paint a false narrative in writing that Defendant, Parker was attempting to complete the transaction in a timely manner; as well as to string Plaintiff, Patterson along and frustrated Plaintiff, Patterson's requests to complete the transaction.

41.     From on or about April 3, 2020 through on or about May 31, 2020, Plaintiff, Patterson repeatedly communicated with Defendants, Parker and Butler requesting information regarding the selected properties and the pertinent legal documents to effectuate the transfers.

42.     Defendants, Parker and Butler continuously assured Plaintiff that he would receive the requested information and documents "shortly", "in a few days", "soon", or "next week."

43.    As time progressed during this period, between April 3, 2020 and May 31, 2020, Plaintiff, Patterson became increasingly concerned that he was defrauded. As a result, Plaintiff, Patterson began performing additional research into Defendant, Parker.

44.    As a result, on or about June 1, 2020, Plaintiff, Patterson communicated to Defendant, Parker and Defendant, Butler that he needed to stop the purported transaction for one of the two properties and receive back half of the funds paid. Plaintiff also conveyed that he still wanted to purchase one property and requested the transaction be completed.

45.    On or about June 2, 2020, Defendant, Parker and Plaintiff, Patterson spoke over the telephone while Plaintiff, Patterson was in the State of New York while, it is believed, Defendant, Parker was in the Commonwealth of Pennsylvania. Defendant, Parker agreed to transfer $85,000 back to Plaintiff, Patterson within the following two weeks. Defendant, Parker also conveyed that he would ensure the remaining property was selected and transferred "soon".

46.    Defendant, Parker instructed Plaintiff, Patterson to communicated with Defendant, Hawes and/or Defendant, Butler regarding the return of the $85,000 (slated for the aborted purchase of the second property).

47.    In June and July 2020, Plaintiff, Patterson regularly sent written requests to Defendant, Parker, Butler, and Hawes and spoke with Defendants – while in different states – over the phone. Defendants regularly confirmed that the $85,000 would be sent within the following two weeks.

48.    In early July 2020, Defendant, Parker conveyed to Plaintiff, Patterson, over the phone – while in different states – that Defendant, Parker had located a property that would be transferred to Plaintiff, Patterson for the $90,000 paid for the one remaining property. However, Defendant,

Parker would not share the address of the property with Plaintiff, Patterson. Nonetheless, Defendant, Parker represented that the legal documents would be provided in a few days.

49.     On or about July 27, 2020, Plaintiff, Patterson had not received (i) the $85,000 that was originally represented to be returned by mid-June; (ii) any additional information regarding the purported property that was selected for him; or (iii) any documents pertaining to the transfer of the purported property.

50.     As such, Plaintiff, Patterson communicated to Defendants, Parker, Butler, and Hawes that he wanted a full return of the $175,000 in funds transferred to Defendants.

51.     In August 2020, Defendants confirmed that they would return the funds to Plaintiff.

52.     Between August 2020 and June 19, 2021, Plaintiff, Patterson communicated with Defendants, Parker, Butler, and Hawes concerning the return of the $175,000 in funds.

53.     Defendants, Parker and Hawes repeatedly represented to Plaintiff, Paterson, while the individuals were in different states, that Defendants would be wiring the funds within two weeks.

54.     Beginning in Fall 2020, Plaintiff, Paterson requested Defendants, Parker and Hawes provide a specific date for the transfer, as well as a receipt for the funds in the meantime. Defendants were substantively non-responsive.

55.     To date, Defendants have failed to return the $175,000 in funds provided to them, for which Plaintiffs have not received any consideration in breach of the representations by Defendants and the original oral agreement.

56.     As a result of the foregoing, Plaintiff, Patterson has suffered significant financial harm, as well as the emotional distress caused thereby.

## V.    CAUSES OF ACTION

### COUNT I
**Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")**
*Plaintiff v. Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10*

57.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein. Plaintiff also incorporates Paragraphs 70-81 as if set forth at length herein.

58.    Plaintiff, Damon L. Patterson is a "person" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(3).

59.    Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10 are "persons" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(3).

60.    Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10, and John Does 1-10 constitute an "enterprise" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(4).

61.    Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10, and John Does 1-10 acted together to form an association-in-fact for the common and continuing purpose to defraud persons", including but not limited to Plaintiff, through a simple fraud scheme involving purported real estate investments.

62.    Defendants, Parker, Butler, Hawes, AP Capital, and John Does 1-10 formed an enterprise and association-in-fact with an ascertainable authority structure that was separate and distinct from any formal corporate structure, i.e. the RICO Enterprise.

63.    The RICO Enterprise, knowingly, fraudulently, deceptively, and unlawfully engaged in the affairs of the RICO Enterprise through a "pattern of racketeering activities", that is believed to be ongoing and continuous, as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(1).

10

64.     It is believed and therefore averred that the RICO Enterprise's actions, as described herein, are acts that are part of the RICO Enterprise's regular way of doing business. It is believed and therefore averred that the RICO Enterprise continues to solicit victims in order to continue its simple fraud scheme in the same fashion as described herein.

65.     The RICO Enterprise engaged in a pattern of indictable conduct, including conduct indictable under 18 U.S.C. 1341 (relating to mail fraud), 18 U.S.C. 1343 (relating to wire fraud), 18 U.S.C. 1952 (relating to racketeering), in that the RICO Enterprise made use of the facilities of interstate commerce in furtherance of simple fraud scheme, including, but not limited to, Plaintiff herein. It is believed and therefore averred that the RICO Enterprise has committed similar fraud, which is believed to be ongoing. Plaintiff is aware of similar allegations asserted in the matter of *Raymond Schaffer, et al. v. Greg Parker, et al.*, Eastern District of Pennsylvania, No. 21-2171.

66.     The RICO Enterprise engages in and affects interstate commerce, including, but not limited to the State of New York, State of New Jersey, State of Ohio, and the Commonwealth of Pennsylvania.

67.     As a result of the RICO Enterprise's pattern of racketeering activities, the RICO Enterprise defrauded Plaintiff to his financial detriment.

68.     Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to treble damages, reasonable attorneys' fees, and costs of suit for the violations committed.

## COUNT II
### Fraud
*Plaintiff v. Defendant, Parker*

69.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

11

70.     Defendant, Parker represented to Plaintiff, Patterson that Defendant, Parker would lawfully sell the two unidentified properties to Plaintiff, Patterson in a timely manner.

71.     However, at the time of the representation and subsequent purported transaction, Defendant, Parker intend to sell any properties to Plaintiff, Patterson.

72.     Plaintiff reasonably and justifiably relied on Defendant, Parker representations, described *supra*.

73.     Plaintiff, relying on Defendant, Parker's representations, transferred $175,000 to an account identified by Defendant, Parker's associate, to Plaintiff's financial and emotional detriment.

74.     Plaintiff has not received any consideration for the $175,000 transferred on or about March 5, 2020.

## COUNT III
### Breach of Oral Agreement
*Plaintiff v. Defendant, Parker*

75.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

76.     In or around February 2020, Plaintiff, Patterson and Defendant, Parker orally agreed that Defendant, Parker would transfer two unidentified properties to Plaintiff, Patterson for the sum of $175,000.

77.     Plaintiff, Patterson transferred the sum of $175,000 as directed by Defendant, Parker.

78.     However, to date, Defendant, Parker has failed to transfer any properties to Plaintiff or return the funds in breach of the oral agreement, to Plaintiff, Patterson's detriment.

## COUNT IV
### Unjust Enrichment
*Plaintiff v. AP Capital*
(Pled in the alternative to Count III)

79.     Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

12

80.     Under the circumstances, it would be unjust for Defendant, AP Capital to retain the

$175,000 that was transferred to it on March 5, 2020.

Respectfully Submitted,

**WEISBERG LAW**                          **SCHAFKOPF LAW, LLC**

 /s/ Matthew B. Weisberg                     /s/ Gary Schafkopf
Matthew B. Weisberg                      Gary Schafkopf
Attorney Id. No. 85570                   Attorney Id. No. 83362
L. Anthony DiJiacomo, III                11 Bala Ave
Attorney Id. No. 321356                  Bala Cynwyd, PA 19004
7 South Morton Ave.                      610-664-5200 Ext 104
Morton, PA 19070                         Fax: 888-283-1334
610-690-0801
Fax: 610-690-0880                        *Attorneys for Plaintiffs*